THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HEATHER GAKER, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>Q3M INSURANCE SOLUTIONS d/b/a FINAL EXPENSE ASSISTANT and TZ INSURANCE SOLUTIONS, LLC,<br><br>*Defendants.* | Case No. 3:22-cv-00296 |

## CLASS-ACTION COMPLAINT

Heather Gaker ("Ms. Gaker" or "Plaintiff"), through her counsel, and on behalf of herself and all others similarly situated, files her Class Action Complaint against Defendants Q3M INSURANCE SOLUTIONS d/b/a Final Expense Assistant ("Final Expense") and TZ Insurance Solutions, LLC ("TZ") (collectively "Defendants").

### NATURE OF THE CASE

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*

### PARTIES

2. Plaintiff Heather Gaker is a citizen and resident of Boynton Beach, Palm Beach County, Florida.

3. Defendant Q3M Insurance Solutions d/b/a Final Expense Assistant ("Final Expense") is a Delaware corporation with its headquarters located at 8530 Cliff Cameron Drive, Charlotte ,North Carolina.

1

4. Final Expense is a telemarketer that sells *inter alia,* burial insurance on behalf of insurers including Defendant TZ. This insurance is commonly referred to as "final expense" insurance.

5. Defendant TZ Insurance Solutions, LLC is a New Jersey limited liability company with its headquarters located at 2200 Fletcher Ave, Floor 4, Fort Lee, New Jersey.

6. TZ is an insurance broker that sells *inter alia*, life insurance and burial insurance. TZ relies on telemarketers such as Final Expense to generate business.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

8. Defendant Final Expense maintains its headquarters and regularly does business in the State of North Carolina

9. TZ is a New Jersey LLC that regularly does business in North Carolina.

10. Defendant TZ availed itself to North Carolina in when it contracted with Defendant Final Expense.

11. Furthermore, TZ directed North Carolina-based Final Expense to place the subject phone calls underlying this litigation.

12. Accordingly, this Court has general jurisdiction over Final Expense and specific jurisdiction over all parties due to the acts and omissions described herein.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2).

**Relevant Background on Gaker**

14. At all times relevant, Ms. Gaker owned a cell phone, the number for which was 765-XXX-2145

15. Ms. Gaker used that cell phone primarily for residential purposes.

16. Ms. Gaker registered her cell phone number on the National Do Not Call Registry on or about November 15, 2019.

17. Gaker registered her cell phone number on the National Do Not Call Registry to obtain solitude from unwanted and invasive telemarketing calls.

**Final Expense and TZ's Violations of the TCPA**

18. Ms. Gaker has never been in the market for "final expense" insurance.

19. At all times relevant to this Complaint, Ms. Gaker did not want or need any "final expense" insurance.

20. Nonetheless, in January of 2020, Ms. Gaker received a series of unwanted calls from Final Expense, attempting to sell end of life insurance at the direction and for the benefit of TZ.

21. Those calls were made to Ms. Gaker on instances including, but not limited to:

- January 3, 2020 at 4:07 pm from (239) 236-1846;
- January 6, 2020 at 10:08 am from (239) 236-1846;
- January 6, 2020 at 2:44 pm from (239) 236-1846;
- January 16, 2020 at 11:20 am from (239) 236-1846;

- January 20, 2020 at 1:56 pm from (239) 236-1846; and,

- January 20, 2020 at 4:16 pm from (765) 407-1616.

22. A true and correct copy of screenshots of the aforementioned calls are attached as Exhibit "A."

23. Each of those calls began with a pause and delay, upon Gaker answering the phone, and the call was then transferred to a live agent who attempted to sell Gaker "final expense insurance."

24. On several of the calls, Ms. Gaker stayed on the line and engaged with the Final Expense representative for the purpose of ascertaining who was behind the unsolicited telemarketing calls. In those calls, Final Expense transferred Gaker over to TZ Insurance, who attempted to sell specific final expense insurance policies, which Gaker declined.

25. Each of those calls were made for the purpose of soliciting final expense insurance, which is not an "emergency purpose" or the conveyance of critical healthcare information. Rather, each of the calls were for telemarketing purposes, namely, to sell an insurance product or service.

26. Gaker's number had been registered on the federal Do Not Call registry for 30 or more days before Final Expense made each the subject calls for TZ.

27. Gaker found the calls to be invasive, irritating, distracting and intruding on her right to be left alone from unwanted telemarketing calls.

**Defendants Cannot Establish Their
Affirmative Defense of Express Written Consent**

28. As discussed within, the telemarketing calls placed to Ms. Gaker violate the TCPA.

29. Ms. Gaker sent correspondence to the Defendants before this suit was filed explaining that Defendants violated the TCPA by calling her cell phone.

30. Defendant Final Expense responded to Ms. Gaker and attempted to persuade her that she has provided her "express written consent" to receive the aforementioned telemarketing calls.

31. Specifically, Final Expense presented Ms. Gaker with a "Trusted Form" document reflecting Ms. Gaker's phone number and personal data along with the date, time and IP address of a purported "opt-in" through a website "Super-Sweepstakes.com."

32. The Trusted Form document contains a visual playback link which purports to reflect a real-time image of the website visitor entering his or her data on the website.

33. The visual playback contains a video of approximately 19 minutes in length.

34. The video contains purported images of the Super-Sweepstakes.com website that was in effect as of January 2020.

35. The website contains white background with dark green, black and gold decal with large conspicuous font "SUPER-SWEEPSTAKES" over images of gold coins with dollars signs. A true and accurate copy of a screenshot of the website is attached to this Complaint as Exhibit B; *See also,* image below.

36. Under the prominent "SUPER-SWEEPSTAKES" decal, the webpage contains large green font that is contrasted with a white background asking "Where should we send YOUR $50,000 if you win?" *Id.*

37. Underneath the aforementioned question as to where the "$50,000" is purportedly to be sent, there are fields for the consumer's personal data to be entered. *See* below.



38. Below those data fields, there are promotional offers for the purported clairvoyant services of "Tara"- a "renowned visionary medium, as well as offers for deals on "last minute vacations." Those promotional offers are presented to the Super-Sweepstakes.com website visitor in black font contrasted with a white background. *See* below.

39. Below the promotional offers is a navy-blue box with white all-caps text reading "CONFIRM YOUR ENTRY."

40. Presenting in a manner diametrically opposed to the large, bold and contrasted "sweepstakes" offer, at the bottom of the screen, below the "CONFIRM YOUR ENTRY" button, in small navy-blue font over a royal blue background, is the following text: "By clicking confirm

6

your entry I consent to be contacted by telephone by any of our <u>Marketing Partners</u> . . . . " *See* below.

41. The words "marketing partners" appear in a similar shade of royal blue as the background with virtually no contrast.



42. There is a hyperlink on the camouflaged words "marketing partners", which directs a visitor who clicks the hyperlink to a webpage listing hundreds of companies, including Final Expense. *Attached as Exhibit* C is a true and accurate copy of the list of "marketing partners" identified by the Super-Sweepstakes website.

7

43. Under the TCPA, the absence of consent is not part of the plaintiff's claim, rather it is the defendant's burden to prove its affirmative defense of "express written consent."[1]

44. For a telemarketer to meet its burden of establishing it had express written consent to call a party, the defendant must present a written agreement with the called party, which contains a **clear and conspicuous disclosure** informing the called party that by executing the agreement he or she is agreeing to receiving telemarketing calls.[2]

45. The FCC has long made this requirement clear:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a **clear and conspicuous disclosure was provided and that unambiguous consent was obtained.**

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 at ¶26, 32, 33 (Feb. 12, 2012).

46. The "disclosure" used by Final Expense and TZ was not clear or conspicuous. Rather, the "disclosure" was deliberately deceptive.

47. The Super-Sweepstakes website was designed to present a loud, clear and conspicuous promotion of a "sweepstake" with a conspicuous, overshadowed and camouflaged disclosure as to the true purpose of the website: obtaining consumer data for telemarketing purposes.

48. The purported "opt-in" is deliberately deceptive and fundamentally at odds with the TCPA and FCC's requirements of telemarketers when obtaining consent to make solicitation calls to consumers.

---

[1] See *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565(F.C.C. December 28, 2007) ("express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."

[2] 47 C.F.R. § 64.1200(f)(9)(i).

49. Because the "opt-in" presented by Final Expense is not a valid form of consent, the Defendants here cannot possibly meet their burden of proof for that affirmative defense.

**Class Allegations**

50. Pursuant to Fed. R. Civ. P. 23, Ms. Gaker brings this case on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, adequacy and predominance.

51. Ms. Gaker seeks to represent the following classes:

> **Final Expense Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States whose phone numbers were procured through the "Super-Sweepstakes.com" website, where such person (1) received more than one telephone call or text message from Final Expense (or someone acting on its behalf) during a 12-month period; and, (2) that person's number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.
>
> **TZ and Final Expense Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States whose phone numbers were procured through the "Super-Sweepstakes.com" website, where such person (1) received more than one telephone call or text message from Final Expense (or someone acting on its behalf) during a 12-month period; and, (2) that person's number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

52. Ms. Gaker reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

53. The members of the proposed classes are so numerous that joinder of all members is impracticable. Ms. Gaker reasonably believes that hundreds or thousands of people have been harmed by Final Expense and TZ's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Final Expense and TZ.

54. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

55. On information and belief, Final Expense and TZ has called and continues to call people who are registered on the National Do Not Call Registry. It is reasonable to expect that Final Expense and TZ will continue to make such calls absent this lawsuit.

56. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Final Expense and TZ called cell phone numbers that were registered on the Do Not Call Registry, whether such calls violate the TCPA.

57. Ms. Gaker's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

58. Ms. Gaker and her counsel will fairly and adequately protect the interests of the members of the proposed class. Gaker's interests do not conflict with the interests of the proposed class she seeks to represent. Gaker has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Gaker and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Gaker reserves the right to join other unnamed class members into this lawsuit.

59. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not

most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

60. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

61. Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry without obtaining valid consent, predominate over questions affecting only individual members.

62. Final Expense and TZ have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## **Direct and Vicarious Liability**

63. To the extent TZ outsources its unlawful telemarketing calls to agents, call centers and vendors, such as Final Expense, it is still liable for calls that violate the TCPA.

64. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located

> outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

65. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

66. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593.

67. Accordingly, in the event TZ did not directly place calls, it would be vicariously liable for any and all unlawful calls made at its direction and on its behalf.

68. As it appears Final Expense directly placed the subject calls, Final Expense would be directly liable for such offending communications.

**COUNT I**
**DEFENDANTS VIOLATED §227(c)(5) THE**
**TELEPHONE CONSUMER PROTECTION ACT**

69. Plaintiff incorporates the allegations in the previous paragraphs as if fully set forth

in this Count.

70. Section 227(c)(5) of the TCPA and the accompanying regulation, 47 C.F.R. § 64.1200(c)(2), prohibit telemarketing calls to residential telephone subscribers who have registered their phone numbers on the Federal Trade Commission's Do-Not-Call Registry.

71. Since 2003, calls to mobile phone numbers registered on the Do-Not-Call Registry have been considered to be calls to a "residential telephone" for the purpose of 227(c)(5) claim. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

72. 47 C.F.R. § 64.1200 (f) provides in relevant part:

> (9) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
>   (i) The written agreement shall include a **clear and conspicuous disclosure** informing the person signing that:
>
>     (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
>     (B) The person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(emphasis added).

73. Likewise, 47 C.F.R. §. 64.1200(f)(3) provides in relevant part:

> The term clear and conspicuous means a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures.

74. Defendants called Plaintiff and the putative class members for solicitation purposes, despite the fact that their numbers were registered on the Do Not Call registry for over 30 days on two or more occasions within a year.

75. Defendants did not procure Plaintiff or the putative class members' express written consent to place the subject telemarketing calls.

76. As Defendants violated the TCPA, Plaintiffs are entitled to up to $500 per call placed by Defendants and up to $1,500 for each willful violation of the TCPA.

77. Defendants' acts as described above were willful, warranting an award of treble damages under the TCPA to Plaintiff and the putative class members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Heather Gaker, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendants Final Expense Assistant and TZ Media, Inc., pursuant to Federal Rule of Civil Procedure 23 *et seq.*, certifying this action as a class action and appointing Ms. Gaker as the class representative;

b. Enter an order appointing Kimmel & Silverman and Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Ms. Gaker and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Final Expense and TZ willfully violated section 227(c)(5) of the TCPA;

d. Enter a judgment in favor of Ms. Gaker and the putative class that enjoins Final Expense and TZ from violating the TCPA's regulations prohibiting Final Expense and TZ from calling numbers registered on the National Do Not Call Registry;

e. Award Ms. Gaker and the class all expenses of this action, and requiring Final Expense and TZ to pay the costs and expenses of class notice and administration; and,

f. Award Ms. Gaker and the class such further and other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

Dated: June 30, 2022

By: */s/ Mitch Luxenburg*
Mitch Luxenburg, Esq.
North Carolina Bar ID No. 42021
Law Offices of Mitchel Luxenburg
P.O. Box 22282
Beachwood, OH 44122
Phone: (216) 452-9301
Email: mitch@mluxlaw.com


Craig Thor Kimmel, Esq. (phv anticipated)
Jacob U. Ginsburg, Esq. (phv anticipated)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: 215-540-8888 ext.148
215-540-8888 ext. 104
Email:kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com


Christopher E. Roberts (phv anticipated)
Butsch Roberts & Associates LLC
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Fax: (314) 863-5711
croberts@butschroberts.com